W. F. ATKINSON v. MARY E. RICHARDSON and WILLIAM E. RICHARDSON.

In August, 1868, A sold to B, a *feme covert*, having a large separate estate, a tract of land, taking for the purchase money two notes with her husband as surety. Subsequently A surrenders these two notes to B, who executes in stead thereof three notes, two of which are made to A. and the third to one C, upon which latter B's husband and A are sureties. After this, the land sale itself was cancelled, and A gave up the two notes he held, and agreed to pay $1,000 on that held by C, B agreeing to pay the balance. C sued on the note he held, and recovered the amount thereof from A. In this action by A against B to recover the amount he had to pay to C over and above what he had promised: *It was held*, that the separate estate of B, the *feme sole*, other than that which was the consideration of the note, (now given back to A,) is not chargeable with its payment, and that therefore A cannot recover.

(The preceding case of *Pippen* v. *Wesson*, ante, cited and approved.)

CIVIL ACTION for the recovery of money only, heard before his Honor, Judge *Seymour*, at Fall Term, 1875, of the Superior Court of WAYNE county.

The plaintiff on the 1st day of August, 1868, sold to the defendant, Mary E. Richardson, a tract of land in Orange county, for thirteen thousand dollars, and took three notes

under seal for that amount, signed by Mary E. Richardson as principal, and her husband, the co-defendant, with whom she intermarried in 1866.

On the 21st of July, 1869, by consent these bonds were surrendered and cancelled and three other bonds were given for the same amount, two payable to the plaintiff and one for $4,509.69 payable to S. P. Cox, the last being signed by Mary E. Richardson as principal and her husband and T. H. Atkinson as sureties. At her request, the last mentioned note was made and accepted in discharge of plaintiff's indebtedness to Cox, *pro tanto*.

On February 7th, 1870, the plaintiff and defendants, at the request of the defendant, Mary E. Richardson, cancelled the contract as to the land, the defendant reconveying the land to the plaintiff and the plaintiff surrendered the two notes held by him and agreed to pay $1,000 on the note held by Cox, and the defendants agreed to pay the balance of said note.

Subsequently Cox brought suit upon the note and on October 2d, 1871, recovered under execution against the plaintiff the sum of $3,200, none of which has been paid the plaintiff by the defendants.

The cause having been referred, the referee found that there is due the plaintiff $2,180.65, which is admitted to be correct. The referee held that the separate estate of the defendant, Mary E. Richardson, was liable for the plaintiff's debt and rendered judgment accordingly, and the defendant excepted. The cause coming on to be heard upon the report and exceptions thereto, the court sustained the exception and rendered judgment in favor of the defendant Mary E. Richardson, and against the plaintiff for cost. Thereupon the plaintiff appealed.

*Faircloth & Granger*, for appellant.
*Smith & Strong*, contra.

RODMAN, J.   It was held in *Pippin* v. *Wesson*, at this term, that the Constitution, in giving married women separate estates in their property, did not give to them a general power to contract.   In order to charge the separate estate, the contract must either expressly, or by necessary implication from the consideration or nature of it, manifest an intent to do so. But if such an intent so appeared, and the contract was for the benefit of the married woman, the courts would enforce the charge by selling the separate estate for the payment of the debt.   The question in the present case is, whether, from the contract, there is a necessary implication of an intent to charge the separate estate of Mrs. Richardson?

In August, 1868, after the adoption of the Constitution, but before the act of 1871–'72, (Bat. Rev., chap. 69,) which, therefore, has no bearing on this case, the plaintiff sold and conveyed to Mrs. Richardson a tract of land at the price of $13,000, and took her notes, with her husband as her surety for that sum.   Afterwards these notes were given up to Mrs. Richardson, and in exchange for them she, as principal, and her husband as her surety, executed to the plaintiff two notes, and a third for $4,503.69, payable to one Cox, which the plaintiff signed as surety for Mrs. Richardson and her husband, and delivered to Cox in payment of a debt which the plaintiff owed him.   The plaintiff was afterwards compelled to pay a part of this note, and the purpose of the present action is, to be indemnified from that payment.

We think that it is a necessary implication from the contract, that Mrs. Richardson charged her separate estate in the land which she purchased from the plaintiff with the payment of that note.   She received as her separate estate the consideration for the note, and it would be against equity that she should hold the land and refuse to pay the price.   But in February, 1870, the plaintiff and Mrs. Richardson and her husband made another agreement by which she re-conveyed the land to the plaintiff, or cancelled the deed which he had

made to her, and also cancelled the two notes which she had executed payable to him, amounting to about $9,000, but the note for $4,503.69, it was agreed should stand, subject to a payment of $1,000, which the plaintiff agreed to make on it. If Mrs. Richardson is liable to the plaintiff in the present action, she will have lost by her dealings with the plaintiff about $4,000.

If the plaintiff's relief is confined to a charge on the land which was the consideration of the note, of course he has no relief at all, as that land has been re-conveyed to him. The question, therefore, is reduced to this: Did Mrs. Richardson, by her contract of July 21st, 1869, charge all the separate estate which she had at that time with its payment, or only the estate which was the consideration of the note?

Mrs. Richardson is not liable at law, by reason of her disability of coverture, and we are of opinion that the plaintiff has no equity upon which the contract will be enforced against any separate estate which she may have had, other than that which was the consideration of the note. There is no express reference to her separate estate, and as there was no benefit to it, there is no implication of an agreement to charge it. The law by giving to married women separate estates in their property did not convert them into free traders with power to speculate and trade in real estate. If it be said that this rule will enable married women who buy land to keep it, if the bargain shall be a good one, and abandon it if it shall be a bad one: the answer is, that all persons who deal with married women must be taken to do so with a knowledge of their disabilities. A married woman may purchase property for ready money, but not on credit, and she may contract debts for the benefit of separate property which she already owns, as for building a house on it, &c. The gift of separate estates with this limited power of contracting in reference to them, was intended for the benefit of married women. A wider construction would in most cases lead to their ruin.

This is the view taken in other States. *Jones* v. *Crostwaite*, 17, Iowa 393 ; *Carpenter* v. *Mitchell*, 50 Ill. 470 ; *Whitworth* v. *Carter*, 43, Miss 61 ; *De Fries* v. *Conklin*, 22 Mich. 251 ;. *Keinen* v. *Wisper*, 40 Mo.

There is no error in the judgment below.

PER CURIAM.                                        Judgment affirmed.